[Civ. No. 6124.   Fourth Dist.   Sept. 11, 1959.]

LLOYD PEST CONTROL COMPANY (a Corporation), Appellant, v. DICK LOPEZ, Respondent.

Augustine & Bryans for Appellant.

Enright, Von Kalinowski & Levitt and Gordon E. Von Kalinowski for Respondent.

MUSSELL, J.—This is an action for an injunction and damages in which plaintiff claims that defendant Dick Lopez, a former employee of plaintiff, acquired knowledge of certain trade secrets and property of the plaintiff while in plaintiff's employ in the pest control business, and that subsequently the defendant engaged in the same business himself in the same locality and used his knowledge of plaintiff's trade secrets to divert and take away plaintiff's business for himself.

The trial court rendered judgment that the defendant in no way used any of plaintiff's trade secrets; that he did not solicit any of plaintiff's customers and that he did not engage in any unfair competition. It was further adjudged that the temporary restraining order theretofore issued be dissolved and that the plaintiff was not damaged in any way whatsoever.

Plaintiff appeals from the judgment, claiming that the findings of fact are not supported by the evidence and that the judgment is against the law.

Appellant Lloyd Pest Control Company, a California corporation since 1936, has for approximately 20 years conducted a general pest control business in San Diego, serving private residences and business establishments at regular intervals for the purpose of exterminating and controlling various types of insects and rodents. The business is comprised of a number of control routes throughout the city of San Diego and outlying areas, one of which is the "La Jolla route," which is involved herein. Each of the routes is serviced by a "route man."

On May 8, 1950, Lopez was employed as a full-time employee by appellant company. He was then inexperienced in the pest control business and received instructions and training from appellant and attended school to become pro-

ficient in the business. In October, 1950, the La Jolla route was made a "full-time route," with approximately 265 customers and Lopez became the route man. From about the 15th of November, 1951, until March 29, 1957, the date he voluntarily terminated his employment with appellant, Lopez was the exclusive route man on the La Jolla route and on August 1, 1955, he was employed on a commission basis rather than a straight salary. He gave appellant two weeks notice of termination of his employment and the record shows that he had no written agreement with appellant as to the terms of his employment or his activities after ceasing to work for the appellant corporation.

Subsequent to terminating his employment with appellant, Lopez passed the state examination for a general pest control license. About seven months after terminating his employment with appellant, during which time he did not engage in business, Lopez, on September 26, 1957, went into the general pest control business for himself in La Jolla under the fictitious name and style of "Universal Pest Control." He announced the opening of his business in La Jolla by running an ad in a La Jolla newspaper and sending approximately 2,000 announcement cards to residents of La Jolla. He secured the names and addresses for these announcements from the La Jolla telephone directory.

Appellant, in the operation of its business maintained two basic types of card index files—"route cards" and "office index cards." The route men were not permitted to remove these cards from the office and they were not available to them. The "route index cards" contained the customer's name and address, the type of service and time when the service was to be rendered, any special instructions, the price of the job when the route man made the collections at the time of service, and the date of the last service rendered. It was from these route index cards that the route man prepared his day's work, transferring the necessary information from the cards to a work pad which he took with him on his route. Appellant did not use in its business any particular processes or techniques perfected by the company and had not compounded any special chemical compound or formula for use in the business. Its operation was comparable in all respects with those of competitors in the La Jolla area. Some of appellant's customers signed service contracts for definite periods of time and in many other instances the service furnished by it

was on a month to month basis. Lopez, while working for plaintiff, did not do any collecting or fix the monthly charges.

Many of appellant's customers were dissatisfied with the service they received after Lopez left its employ and many of these customers quit the service long before Lopez went into business for himself. Many customers quit because they liked Lopez personally; others because they wanted a service with headquarters in La Jolla; others because they felt that Lopez was more efficient and they liked his service better; and still others because they were dissatisfied with appellant's service.

After terminating his employment with appellant and going into busines for himself, Lopez made no special effort to contact any of appellant's customers. However, he met persons on the street or in their homes who recognized or knew him and asked him to take over their service; others he met while going from door to door canvassing in La Jolla. In this canvassing Lopez was looking for business but in no instance did he ask anyone to cancel their service with appellant and give him the business. He was very cautious in this regard and actually went out of his way to avoid taking customers from appellant.

The trial court found the foregoing facts to be true and further found that the activities of Lopez fell far short of unlawful solicitation of appellant's customers or former customers; that the plaintiff's business is one where service rather than production or technique is involved; that Lopez used no knowledge or information he had to the detriment of plaintiff; that no unfair competition on the part of Lopez existed and that his competition was fair in all respects and should be encouraged rather than discouraged. The trial court's findings herein are supported by substantial evidence and cannot be here disturbed. (*Estate of Bristol*, 23 Cal.2d 221, 223 [143 P.2d 689].) And, as is said in *Estate of Teel*, 25 Cal.2d 520, 527 [154 P.2d 384] :

" 'All of the evidence most favorable to the respondent must be accepted as true, and that unfavorable discarded as not having sufficient verity to be accepted by the trier of fact. If the evidence so viewed is sufficient as a matter of law, the judgment must be affirmed.' "

In *Aetna Bldg. Maintenance Co. v. West*, 39 Cal.2d 198 [246 P.2d 11], it appears that for about three years West was employed by the Aetna Building Maintenance Company as a salesman and supervisor. After he left that employment and engaged in the same business, Aetna sued him for damages

assertedly resulting from unfair competition. The complaint alleged that during his employment West became familiar with details of plaintiff's business, including customer lists, the extent and type of service required by its customers, the use of certain procedures, material and equipment and the net cost of performing service for each customer, and the charges made for it. Aetna claimed that with this information, which it asserted constituted trade secrets, West solicited some of its customers to transfer their patronage to him and obtained contracts from them. ■■■ The court held that in the absence of an enforceable contract containing negative coveants to the contrary, equity will not enjoin a former employee from soliciting business from his former employer's customers, provided his competition is fairly and legally conducted; that West had the right to advise Aetna's customers that he was severing his business relations with it and engaging in business for himself; that merely informing customers of one's former employer of a change of employment,without more, is not solicitation. ■■ ■■ Neither does the willingness to discuss business upon invitation of another party constitute solicitation on the part of the invitee; that equity will not enjoin a former employee from receiving business from the customers of his former employer, even though the circumstances be such that he should be prohibited from soliciting such business; that the facts did not justify the application of the principles governing the right of the parties in connection with retail delivery routes; that the prospective customers were commonly known to the trade or could easily be discovered through business directories or by observation; that there was no evidence that West sought out preferred customers; that the business was highly competitive and patronage depended upon efficiency of service rather than personal relationship; that contracts were of brief duration and cancellations were frequent and that under such trade conditions, equity would not enjoin the solicitation of the former employer's customers. ■■■ While the court there further held that equitable protection may be invoked against the subsequent use by a former employee of knowledge of the "peculiar likes and fancies and other characteristics" of the former employer's customers where such knowledge will aid him in securing and retaining their business, the court said: "However, where, as here, superiority of product or service, rather than personal relationships or a secret specialty, is the

basis for patronage, a knowledge of the customer's requirements is not sufficient reason for an injunction.''

■ See also *Alex Foods, Inc.* v. *Metcalfe,* 137 Cal.App.2d 415, 424 [290 P.2d 646], where the court said: ''A former employee has the right to engage in a competitive business for himself and to enter into competition with his former employer, even for the business of those who had formerly been the customers of his former employer, provided such competition is fairly and legally conducted. ■ Equity will, to the fullest extent, protect the property rights of employers in their trade secrets and otherwise, but public policy and natural justice require that equity should also be solicitous for the right inherent in all people, not fettered by negative covenants upon their part to the contrary, to follow any of the common occupations of life. (*Continental Car-Na-Var Corp.* v. *Moseley,* 24 Cal.2d 104 [148 P.2d 9].)''

■ In the instant case the record shows that many of plaintiff's customers stated that they were dissatisfied with its services after Lopez left; that Lopez waited for approximately which he ran an ad in a La Jolla newspaper; that he sent out seven months before going into business for himself, after 2,000 announcements, choosing the names from the La Jolla telephone directory, indicated as home owners. He canvassed certain neighborhoods in order to gain business and while it is true that he obtained many former Lloyd's customers, many of them had quit Lloyd's prior to the time that he, Lopez, began their service and the record is devoid of proof that Lopez in any instance urged or solicited any of Lloyd's customers to quit Lloyd's and give their business to him.

We fail to find any evidence of unfair competition in the record and conclude that the record contains sufficient substantial evidence to support the findings and judgment herein and that no reversible errors appear.

Judgment affirmed.

Griffin, P .J., concurred.